**Certiorari Granted, March 1, 2013, No. 33,928**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-034**

**Filing Date: November 8, 2012**

**Docket No. 31,119**

**CHAD SKOWRONSKI,**

    **Plaintiff-Appellant,**

**v.**

**THE NEW MEXICO PUBLIC
EDUCATION DEPARTMENT and
VERONICA C. GARCIA, in her official
capacity as the Secretary of the New
Mexico Public Education Department,**

    **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Sarah M. Singleton, District Judge**

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

Gary K. King, Attorney General
Andrea R. Buzzard, Assistant Attorney General
Santa Fe, NM

N.M. Public Education Department
Willie R. Brown, General Counsel
Santa Fe, NM

for Appellees

**OPINION**

1

**SUTIN, Judge.**

**{1}**     The district court affirmed a decision of the Secretary of the New Mexico Public Education Department (the Department) revoking the teaching license of Chad Skowronski. Skowronski appeals. We affirm.

**BACKGROUND**

**{2}**     At this point, we only recite a few of the many facts underlying a story strewn with credibility issues seen completely differently by a hearing officer, who recommended dismissal of the Department's administrative charges against Skowronski, and the Secretary, who alone made the final decision to revoke Skowronski's teaching license. The underlying facts will be more fully presented in later sections of this Opinion.

**{3}**     The Department charged Skowronski with engaging in inappropriate and improper sexual contact or behavior with a fourteen-year-old female (the Victim). Skowronski, a science teacher, had a teaching license issued by the Department. The alleged contact occurred in the living room of persons who owned and operated the charter school where Skowronski had been hired to teach and where the Victim was considering attending, and who were also the Victim's godparents. The Victim's godparents hosted an event that included a potluck followed by a poker game, which was attended, among other guests, by Skowronski, the Victim, and the Victim's parents. Following the party, the Victim's parents spent the night in a tent in a nearby field. The Victim, who had stayed overnight at her godparents' home many times, slept on the couch in the living room. Skowronski also slept in the living room, on the floor at a distance, according to Skowronski, of ten feet from the Victim, but according to the Victim and her father, within one to two feet of the Victim. The alleged contact occurred when the Victim and Skowronski were alone in the living room.

**{4}**     The Department's notice of contemplated action to take disciplinary action against Skowronski's license went first to a hearing officer. *See* NMSA 1978, § 61-1-4(F) (2003) (explaining that if the licensee requests a hearing, a hearing shall be held within sixty days); 6.68.3.9(D)(1) NMAC (11/30/2005) (stating that all hearings may be conducted by a hearing officer who is a licensed New Mexico attorney and who is not employed by the Department). After an evidentiary hearing, the hearing officer made recommended findings of fact and conclusions of law followed by a recommended decision. *See* 6.68.3.12(B) NMAC (11/30/2005) (stating that the hearing officer "shall submit a formal written report to the [S]ecretary consisting of [among other things] . . . proposed findings of fact, proposed conclusions of law, and [a proposed] order"). The hearing officer found that the charges had not been proved by a preponderance of the evidence. And he recommended that the notice of contemplated action be dismissed with prejudice.

**{5}**     The hearing officer's recommended decision went to the Secretary for final decision. *See* NMSA 1978, § 61-1-13 (1993) (stating that after a hearing has been completed, the members of the board shall consider the case and shall thereafter render a decision);

2

6.68.3.13(A) NMAC (11/30/2005) (stating that the Secretary "shall render a final decision and order based on a preponderance of the evidence"). The Secretary entered a decision and order which, after indicating that she had familiarized herself with the record before the hearing officer, and after adopting some of the hearing officer's recommendations and rejecting others, revoked Skowronski's license, ultimately concluding "that good and just cause hav[e] been established by a preponderance of the evidence to warrant revocation." As reflected later in this Opinion, the essential difference between the hearing officer's view of the circumstances and that of the Secretary was how these two decision makers saw the credibility of Victim and Skowronski and the believability of their testimony.

**{6}**     Skowronski appealed to the district court. *See* NMSA 1978, §§ 39-3-1.1, 61-1-17 (1999); Rule 1-074 NMRA. In its final decision on the Rule 1-074 appeal, the district court affirmed the decision of the Secretary. Skowronski appeals the decision of the district court and asserts the following points: (1) the Department erred as a matter of law in submitting his license revocation to the Secretary for final decision, (2) the Secretary erred in substituting her own credibility findings for those of the hearing officer, (3) the Department and the Secretary denied him due process of law, and (4) the Secretary's decision was not supported by substantial evidence.

**DISCUSSION**

**I.      The Issue of the Secretary's Authority to Make the Final Revocation Decision**

**{7}**     Skowronski contends that the Secretary did not have constitutional or statutory authority to delegate exclusive authority to a cabinet secretary to revoke a teaching license. He argues that Article XII, Section 6 of the New Mexico Constitution and the Uniform Licensing Act (the Licensing Act), NMSA 1978, §§ 61-1-1 to -33 (1957, as amended through 2003), required the Department to refer the hearing officer's recommended decision for a final decision by a quorum instead of by a single individual. The issue requires us to interpret constitutional and legislative acts, issues of law only, and our review is de novo. *City of Aztec v. Gurule*, 2010-NMSC-006, ¶ 5, 147 N.M. 693, 228 P.3d 477; *see Att'y Gen. v. N.M. Pub. Regulation Comm'n*, 2011-NMSC-034, ¶ 10, 150 N.M. 174, 258 P.3d 453. We first set out the relevant constitutional and statutory provisions, plus administrative rules promulgated by the Department. Afterward, we analyze the question of what Article XII, Section 6 and the applicable statutes intended in regard to who makes the final revocation decision.

**The Constitution**

**{8}**     Article XII, Section 6 states in full:

Public education department; public education commission.

A.      There is hereby created a "public education department" and

3

a "public education commission" that shall have such powers and duties as provided by law. The department shall be a cabinet department headed by a secretary of public education who is a qualified, experienced educator who shall be appointed by the governor and confirmed by the senate.

B.      Ten members of the public education commission shall be elected for staggered terms of four years as provided by law. Commission members shall be residents of the public education commission district from which they are elected. Change of residence of a commission member to a place outside the district from which he was elected shall automatically terminate the term of that member.

C.      The governor shall fill vacancies on the commission by appointment of a resident from the district in which the vacancy occurs until the next regular election for membership on the commission.

D.      The secretary of public education shall have administrative and regulatory powers and duties, including all functions relating to the distribution of school funds and financial accounting for the public schools to be performed as provided by law.

E.      The elected members of the 2003 state board of education shall constitute the public education commission, if this amendment is approved, until their terms expire and the districts from which the state board of education were elected shall constitute the state public education commission districts until changed by law.

{9}      Before this amendment establishing the Public Education Department, the Secretary of Public Education and the State Board of Education had the final administrative say on revocation of licenses. *See, e.g.*, *Bd. of Educ. of Melrose Mun. Sch. v. N.M. Bd. of Educ. (Melrose)*, 106 N.M. 129, 130-31, 740 P.2d 123, 124-25 (Ct. App. 1987) (involving whether the State Board of Education erred in reversing the credibility determinations of a local board); *Bd. of Educ. of Alamogordo Pub. Sch. v. Jennings*, 98 N.M. 602, 604-05, 651 P.2d 1037, 1039-40 (Ct. App. 1982) (involving whether the State Board of Education erred in reversing a local board), *overruled on other grounds by Melrose*, 106 N.M. 129, 740 P.2d 123. Upon amendment, the Public Education Commission (the Commission) was originally composed of the elected members of the 2003 State Board of Education. N.M. Const. art. XII, § 6(E). But the powers and duties of the Commission were not those given to the previous State Board of Education but, instead, were those "provided by law." N.M. Const. art. XII, § 6(A).

**The Licensing Act**

{10}      The Licensing Act pre-dated the amendment of Article XII, Section 6. The Licensing

Act defines "board," an operative word in the matter before us, as, among other things, "a board, commission[,] or agency that administers a profession or occupation licensed pursuant to Chapter 61 NMSA 1978[.]" Section 61-1-2(A)(3). The Licensing Act also defines "board" as "any other state agency to which the . . . Licensing Act . . . is applied by law[.]" Section 61-1-2(A)(4). Taking several sections of the Licensing Act together, the Act provides the procedures required for revocation of licenses by boards. *See, e.g.*, §§ 61-1-2(A)(3), (4), (C), (D); §§ 61-1-4 to -17, -19, -21. A licensee has a right to a hearing before the board that has authority to take revocation action. Section 61-1-3(F). The hearing can take place before the board or before a board-selected hearing officer who must submit a report to the board with findings of fact. Section 61-1-7(A).

{11}    Of particular note is Section 61-1-13(A). It provides in part that "[a]fter a hearing has been completed, the members of the board shall proceed to consider the case and as soon as practicable shall render their decision, provided that the decision shall be rendered by a quorum of the board." *Id.* Skowronski relies on this section in arguing that because the term "quorum" can apply only to multiple-member bodies, Section 61-1-13(A) necessarily mandates that more than a singular individual, such as the Secretary, must participate in revocation decisions. *See Polk Cnty. v. State Bd. of Equalization*, 484 S.W.2d 49, 56 (Tenn. Ct. App. 1972) ("The word 'quorum' implies a meeting, and the action must be group action, not merely action of a particular number of members as individuals." (internal quotation marks and citation omitted)). He points out that the Licensing Act applies to the licensing of teachers and that it requires that a revocation decision be made by "members of the board," meaning members of any board, commission, or agency as to which the Licensing Act applies. *See* § 61-1-2(A)(3), (4); *see also* NMSA 1978, § 22-10A-31 (2003) (stating, in relation to licensed school employees, "[i]n accordance with the procedures provided in the . . . Licensing Act, . . . the state board [department] may . . . revoke a department-issued license"). Skowronski asserts that either the Commission created in the amendment to Article XII, Section 6 or some other body of at least more than one person was required to review the record before the hearing officer and make a final decision.

**The Public Education Department Act**

{12}    The Public Education Department Act (the Education Act), NMSA 1978, §§ 9-24-1 to -15 (2004, as amended through 2006), was a result of the 2003 constitutional amendment to Article XII, Section 6. The constitutional amendment amended the "state board of education" and the "state department of public education" out of existence and created in their stead a "public education commission" and a "public education department" to be headed by a cabinet-level "secretary of public education" appointed by the governor. N.M. Const. art. XII, § 6(A); *see id. annot.* (the 2003 amendment) (explaining that Subsection (A) of Article XII, Section 6 (1986), which had provided for the creation of a "state board of education" and a "state department of public education" was rewritten by the 2003 amendment, which was subsequently adopted through a special election on September 23, 2003). The Education Act clarifies that all references in law to the state board of education and all references to the state department of public education or the department of education "shall be deemed to be references to the public

education department." Section 9-24-15(C). Pursuant to Sections 22-10A-1 to -11.1, it is the "state board [department]" that issues licenses.

**{13}** Under the Education Act, the Secretary is the administrative head of the Department. *See* § 9-24-5(A). The powers and duties of the Secretary include "manag[ing] all operations of the [D]epartment and . . . administer[ing] and enforc[ing] the laws with which he or the [D]epartment is charged" and "[t]o perform his duties, the [S]ecretary has every power expressly enumerated in the law, whether granted to the [S]ecretary [or] the [D]epartment . . . . [including] tak[ing] administrative action by issuing orders . . . to ensure implementation of and compliance with the provisions of law for which administration or execution he is responsible and to enforce those orders . . . by appropriate administrative action in the courts[.]" Section 9-24-8(A), (B)(5). In addition, "[t]he [S]ecretary may make and adopt such reasonable and procedural rules as may be necessary to carry out the duties of the [D]epartment and its divisions." Section 9-24-8(D).

**{14}** Section 9-24-9(A) of the Education Act relates to the Public Education Commission created under Article XII, Section 6 and states that "[t]he [C]ommission shall be administratively attached to the [D]epartment, with administrative staff provided by the [D]epartment." In terms of the duties and responsibilities of the Commission, Section 9-24-9(A) states only that "[t]he [C]ommission shall advise the [D]epartment on policy matters and shall perform other functions as provided by law."

**{15}** The Secretary adopted regulations pursuant to Section 9-24-8(D). *See* 6.68.3.1 to .16 NMAC (11/30/2005). The regulations track the Licensing Act and provide for a notice of contemplated action, time limits for requesting and scheduling a hearing, appointment of a hearing officer, subpoena authority for discovery and hearing purposes, discovery rights, recitation of a licensee's rights, and an administrative hearing. *See* 6.68.3.8 to .15 NMAC. In particular, New Mexico Administrative Code Regulation 6.68.3.12(B) provides for submission to the Secretary of a hearing officer's report, and Regulation 6.68.3.13(A), (B), and (C) provides for a final decision of the Secretary. The regulations are silent with respect to the Commission. And they do not provide for a hearing before the Secretary.

**The Public School Code and the School Personnel Act**

**{16}** Sections in the Public School Code, NMSA 1978, §§ 22-1-1 to -31-6 (excluding Article 5A) (1967, as amended through 2012), and the School Personnel Act, NMSA 1978, §§ 22-10A-1 to -39 (1967, as amended through 2011), namely, Section 22-2-2(K) of the Public School Code and Section 22-10A-31 of the School Personnel Act relate to revocation of teachers' licenses. Section 22-10A-31 provides: "In accordance with the procedures provided in the . . . Licensing Act . . ., the state board [department] may deny, suspend[,] or revoke a [D]epartment-issued license for incompetency, moral turpitude[,] or any other good and just cause."[1] Section 22-2-

---

[1] Skowronski asserts that the bracketed "[department]" in Section 22-10A-31 was inserted by the compilers of the statutory material. Skowronski notes that the New Mexico

2(K) similarly provides that "[t]he [D]epartment shall . . . deny, suspend[,] or revoke a license according to law for incompetency, moral turpitude[,] or any other good and just cause[.]"

**The Authority Question**

{17}    The puzzling question here is whether the Article XII, Section 6 amendment and the Education Act grant to the Secretary the exclusive authority to revoke a teacher's license. The Licensing Act, a general act controlling the process for revocation of licenses issued by agencies covered by the Licensing Act, and including teachers' licenses, has remained untouched through the various alterations made by the Article XII, Section 6 amendment and post-amendment legislation, in regard to how a "board," as defined in the Licensing Act, is to make the final decision regarding license revocation. In the Education Act, the Legislature has apparently construed that Article XII, Section 6(A)'s reference to "such powers and duties as provided by law" that the Department and the Commission shall have allows the Legislature to limit the Commission's powers and duties to nothing beyond a purely advisory role. Section 9-24-9(A). Yet, the Constitution does not give any hint that the Commission is to be relegated solely to an advisory position. Also, in the Education Act, the Legislature gave broad duties and responsibilities to the Secretary. *See* § 9-24-8. But nothing in the Education Act specifically grants the Secretary the exclusive duty and responsibility to make final license revocation decisions. The Public School Code and the School Personnel Act also contain no such specific grant to the Secretary, leaving the revocation decision to the "board" or "department." *See* §§ 22-2-2(K), 22-10A-31. Only through the promulgated Department regulations is the Secretary made the exclusive decider in regard to license revocation. *See* 6.68.3.13(A), (B), (C) NMAC.

{18}    The Department and the Secretary argue that, based on the constitutional amendment and Sections 9-24-15(C), 22-10A-31, 22-2-2(K), the Department is charged with the duty to revoke teaching licenses issued by the Department. They emphasize that the Department is headed by the Secretary with broad powers and duties, who must enforce the laws with which the Department is charged, including Section 22-10A-31, and who must take the required administrative actions to enforce Section 22-10A-31. Their logic moves to the further position that, in her enforcement of Section 22-10A-31, the Secretary must follow the procedures of the Licensing Act and that she did so by adopting regulations pursuant to Section 9-24-8(D). The regulations grant to the Secretary the authority to decide the revocation question after reviewing the report of the hearing officer. 6.68.3.13(A), (B), (C) NMAC.

{19}    The Department and the Secretary also argue a number of further points. They argue that

---

Session Laws 2003, Chapter 153, Section 52 sets out the original and actual enactment without the word "[department]" immediately following the word "board." His apparent purpose is to advance a view that the Legislature intended the term "board" to remain a purposeful and controlling term when it comes to actions of the Department relating to revocation of license. We do not find the position persuasive.

"quorum" in Section 61-1-13 of the Licensing Act applies when the deciding body is a multiple-member board and not when, as here, "the decider is a single individual[.]" They argue that the language of the Licensing Act, which is general legislation, does not override the specific constitutional authority permitting specific legislation and control in regard to the question of authority to revoke licenses. They assert that the Licensing Act's procedures "embrace a 'state agency' made subject to its coverage by law" and that the agency in this case is the Department whose Secretary is required to enforce Section 22-10A-31. They further argue that nowhere in the Constitution or the statutes is the Commission given a duty or authority to play any part in the administrative revocation process. In regard to the Commission, the Department and the Secretary point out that the Commission has enumerated statutory duties as expressly set out in Sections 22-2-2.2, 22-2-14(C), (G), 22-8B-16, 22-14-3, and 22-14-3.1. Among the duties are approving or disapproving charter school applications, *see* § 22-8B-16, and supervising the administration of federal aid funds relating to vocational education and vocational rehabilitation. *See* §§ 22-14-3, -3.1. The Department and the Secretary conclude that logic and common sense require the conclusion that, under the statutory scheme relating to education, the Secretary, and not the Commission or any other group, has the authority to make the final determination of revocation and that any view to the contrary is absurd.

**{20}** There does exist a gap between the Licensing Act's plural-member or quorum authority as applied to boards, commissions, or agencies that regulate license issuance and that of the Education Act, the Public School Code, and the School Personnel Act. The Licensing Act does not appear to have ever contemplated that license revocation be in the exclusive domain of a single person, even a cabinet secretary. The use of "quorum" in the Licensing Act, as well as the Act's use of "members of the board," indicates that the Legislature contemplated that more than a single person would make a revocation decision. The Licensing Act has not been amended to change these procedural requirements. Yet, in the Education Act, the Legislature chose to severely limit the Commission's duties and responsibilities. And, in the Public School Code, the Legislature did not grant authority to discipline licensees in its enumeration of the duties of the Commission. It appears that the Legislature intended in the School Personnel Act to equate "board" with the "department." *See, e.g.*, § 22-10A-3(A)-(C); *see also* § 22-10A-31(A) ("[T]he state board [department] may deny, suspend[,] or revoke a department-issued license for incompetency, moral turpitude[,] or any other good and just cause."); § 9-24-15(C) ("All references in law to the state board of education shall be deemed to be references to the public education department. All references to the state department of public education or the department of education shall be deemed to be references to the public education department."). As the district court analyzed this, the intent extends to substituting the Department for the Board as authority to revoke a teaching license with final authority resting in the Secretary. The district court also particularly noted that none of the various laws giving authority to the Public Education Commission grant the Commission the authority to revoke teaching licenses. Furthermore, the Secretary promulgated regulations giving the Secretary exclusive and final authority as to license revocations. Those regulations have the force of law. *See, e.g.*, *Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 24, 147 N.M. 583, 227 P.2d 73; *Duke City Lumber Co. v. N.M. Envtl. Improvement Bd.*, 101 N.M. 291, 292, 681 P.2d 717, 718 (1984) ("The Legislature grants agencies the discretion of promulgating rules and regulations which have the force of

8

law.”).

{21}     We are hard pressed to hold that the Secretary lacked authority to revoke Skowronski's license.  Article XII, Section 6 grants broad authority to the Legislature in regard to the duties and authority of the Commission and the Secretary.  The Legislature enacted a scheme of specific legislation relating to those duties and authority.  It is not our position to question the wisdom of placing the final decision regarding revocation of a teacher's license in one person. *See State ex rel. Udall v. Pub. Emps. Ret. Bd.*, 120 N.M. 786, 788, 907 P.2d 190, 192 (1995) (stating that "[i]t is not the province of [the c]ourt to inquire into the wisdom or policy of an act of the Legislature").  We think it is significant that, other than arguing how the constitutional and statutory provisions are to be interpreted, Skowronski cites no authority to support his arguments.  Thus, in interpreting the entire constitutional and statutory education-related scheme, we must side with the position of the Department and the Secretary.  We see no constitutional mandate that requires an interpretation of the constitutional and statutory scheme as placing the final decision-making authority in the Commission or some unspecified group or as precluding the Secretary from having the final administrative say.  Nor do we see any basis in the scheme to determine that the Commission or any group has the authority to make the revocation decisions.  We therefore hold that neither the Secretary, the Department, nor the district court erred on the question of the Secretary's authority to make the final revocation decision.

## II.     The Issues of Substitution of Credibility Determinations and Denial of Due Process

### The Administrative Hearing and Review Standards

{22}     Regulation 6.68.3.8(B) states that the Department "may suspend, revoke[,] or take other disciplinary action against a license . . . for incompetency, immorality[,] or any other good and just cause."  The regulation lists nine examples of "[o]ther good and just cause." *Id.*  Barring success on his lack-of-authority argument, it seems clear that Skowronski does not contest that, were the Victim's allegations true, revocation would be proper under Regulation 6.68.3.8(B).

{23}     The regulations provide that the purpose of the hearing before the hearing officer is "to determine whether sufficient grounds exist for the suspension, revocation[,] or other disciplinary action" and that the Department has the "burden of proof . . . to establish by a preponderance of the evidence that sufficient grounds exists."  6.68.3.11(A) NMAC.  After the hearing, the hearing officer must submit a formal written report to the Secretary containing proposed findings of fact, proposed conclusions of law, and a proposed order.  6.68.3.12(B) NMAC.

{24}     The regulations contemplate that the Secretary's role is that of adjudicator.  The Secretary has the duty to "review the report  of the hearing officer together with any briefs or proposed findings/conclusions/orders timely submitted by the parties" and to then "render a final decision and order based on a preponderance of the evidence."  6.68.3.13(A) NMAC.  The Secretary is required to "(1) adopt the hearing officer's proposed findings of fact, conclusions of law[,] and order; or (2) modify said findings of fact and conclusions of law and order and

9

render a decision; or (3) reopen the case to receive additional evidence . . .; or (4) reject any action against the licensee's licensure[.]" 6.68.3.13(A)(1)-(4) NMAC. The regulations expressly state that "[t]he [S]ecretary is not an appellate reviewer of the hearing officer's proposed findings/conclusions/order[,]" but that "the [S]ecretary is ultimately responsible for issuing a final decision and order relative to possible disciplinary action against a licensee's educator licensure." 6.68.3.13(B) NMAC. If the Secretary "seeks to deviate" from proposed findings of fact or conclusions of law of the hearing officer, the Secretary must go further and make "an independent review of the transcript of the [proceedings]" before the hearing officer. *Id.* The Secretary's deviations must be "supported by a preponderance of the evidence[.]" *Id.*

**Substitution of Credibility Determinations**

**{25}** The issue is whether the Secretary erred in (1) failing to defer to and rejecting the hearing officer's credibility determinations that supported a recommendation to dismiss the Department's charges; and (2) making her own, different credibility determinations to support revocation. Thus, the issue requires analysis of what legal requirement exists, if any, that imposes a duty upon the Secretary to defer to the credibility determinations of the hearing officer. This issue is one of law, which we review de novo. *Gurule*, 2010-NMSC-006, ¶ 5.

**{26}** Skowronski argues that neither the Licensing Act nor the Department's regulations permit the Secretary to "reject outright" the hearing officer's credibility determinations or to substitute her own credibility findings or her "own views" for those of the hearing officer. In support of his contention, Skowronski discusses three New Mexico cases: *In re Bristol*, 2006-NMSC-041, 140 N.M. 317, 142 P.3d 905; *Melrose*, 106 N.M. 129, 740 P.2d 123; and *Jennings*, 98 N.M. 602, 651 P.2d 1037. Skowronski's authorities do not support his contention.

**{27}** *In re Bristol* is distinguishable and inapplicable. *In re Bristol* involved attorney disciplinary proceedings and described a rule-driven disciplinary process that differed in key respects from the process set forth in the Department's regulations. 2006-NMSC-041, ¶ 1. Disciplinary proceedings against an attorney commenced with a hearing before a hearing committee. *Id.* ¶ 2. The hearing committee was designated to take evidence during the course of a formal disciplinary proceeding and to issue "its findings of fact, conclusions and recommendations for discipline or other disposition of the matter, which are submitted directly to the [d]isciplinary [b]oard." *Id.* ¶¶ 2, 15 (internal quotation marks and citation omitted). The disciplinary board then appointed a hearing panel to review the recommended decision of the hearing committee. *Id.* ¶¶ 3, 12. Our Supreme Court emphasized in *In re Bristol* that in terms of its review of the committee's factual findings, the hearing panel's role was consistent with the role of a district court acting in an appellate capacity to review an administrative agency's factual determinations. *Id.* ¶ 16. Thus, the hearing panel was to "defer to the hearing committee on matters of weight and credibility, viewing the evidence in the light most favorable to the hearing committee's decision[,] and resolving all conflicts and reasonable inferences in favor of the decision reached by the hearing committee." *Id.*

**{28}** Unlike the hearing committee in *In re Bristol*, which was charged with making findings

10

and conclusions, the hearing officer in this case was granted the more limited duty of making *proposed* findings and *proposed* conclusions. *See id.* ¶ 2. *Compare* Rule 17-104(C)(3) NMRA (stating in regard to the rules governing attorney discipline that hearing committees "shall have the power and duty . . . to report to the [d]isciplinary [b]oard their findings of fact, and conclusions of law[,] and recommendations"), *with* 6.68.3.12(B) NMAC (stating that "the hearing officer shall submit a formal written report to the [S]ecretary consisting of . . . *proposed* findings of fact [and] *proposed* conclusions of law" (emphasis added)). And unlike the hearing panel in *In re Bristol*, which was to review the hearing committee's findings of fact in a deferential, appellate capacity, here, the Secretary was explicitly "not an appellate reviewer of the hearing officer's proposed findings/conclusions/order." 6.68.3.13(B) NMAC. "Rather, the [S]ecretary is ultimately responsible for issuing a final decision and order relative to possible disciplinary action against a licensee's educator licensure." *Id.* In light of the differences between the respective duties of the *In re Bristol* hearing committee and the hearing officer in this case and the differences between the *In re Bristol* hearing panel and the Secretary in this case, *In re Bristol* has no bearing on our analysis of the issues presented in this case.

{29}    Further, we note that neither *Melrose* nor *Jennings* supports Skowronski's argument that the Secretary was not permitted to reject the hearing officer's proposed findings and conclusions. In fact, they tend to support the opposite conclusion. In *Jennings*, this Court held that the State Board of Education was entitled to reach conclusions contrary to those of its own hearing officer provided that the conclusion was not unreasonable and was supported by substantial evidence. 98 N.M. at 608, 651 P.2d at 1043. In *Jennings*, this Court upheld the State Board of Education's decision notwithstanding the fact that the extent of the Board's record examination was limited to its having "reviewed the report" of the hearing officer. *Id.* at 604, 651 P.2d at 1039; *see also id.* at 614, 651 P.2d at 1049 (Donnelly, J., dissenting) (explaining that "fundamental fairness requires that when the State Board . . . elects to disregard the findings and conclusions of its own hearing officer and to arrive at a contrary result, it must review the entire record of the . . . hearing" especially where "the ultimate decision rests upon the credibility of . . . opposing major witnesses").

{30}    In *Melrose*, this Court explained that "*Jennings* was incorrectly decided to the extent [that] it permits the State Board to reach a decision contrary to the hearing officer's, particularly on issues involving the credibility of witnesses, without the State Board having reviewed the transcript of proceedings, as it relates to the issue involved." *Melrose*, 106 N.M. at 131, 740 P.2d at 125. We clarified, however, that

> our decision here does not affect the holding of *Jennings* to the effect that the State Board can reverse the decision of its hearing officer, without taking new evidence, *even on points turning on the credibility of witnesses*. We only require that before the State Board opts to reject the decision of its hearing officer, *particularly when the credibility of the witnesses is at issue*, that at the very least it review so much of the transcript of the proceedings before the hearing officer as is necessary to support its decision.

11

*Melrose*, 106 N.M. at 131, 740 P.2d at 125 (emphasis added).

**{31}** Skowronski does not argue, nor on this record could he reasonably argue, that the Secretary rejected the hearing officer's proposed findings of fact or his views of the credibility of the witnesses without having reviewed the transcript of the proceedings. The Secretary stated in her final decision that she had "familiarized [herself] with the record, including the hearing officer's report, and [was] otherwise fully advised in this matter[.]" She follows this statement with nine full pages of findings of fact, each supported by references to the hearing transcript and other parts of the record. Thus, it is clear that the Secretary, in rejecting the hearing officer's proposed findings, did so in a manner that comported with *Jennings* and that was in line with Judge Donnelly's dissent that we cited with approval in *Melrose*. *See Melrose*, 106 N.M. at 131, 740 P.2d at 125.

**{32}** Finally, contrary to Skowronski's argument that the Secretary was not permitted to reject the hearing officer's credibility determinations, the Department's regulations provide the Secretary with the liberty to deviate from any of the hearing officer's proposed findings or conclusions provided that any deviation is supported by a preponderance of the evidence after conducting an independent review of the transcript of the hearing. 6.68.3.13(B) NMAC. By his failure to acknowledge this aspect of the Department's regulations, Skowronski avoids calling attention to an obvious gap in his argument that the Secretary exceeded her authority by rejecting the hearing officer's proposed findings. At the same time, Skowronski also forgoes any potential argument regarding whether the Secretary's deviations were supported by a preponderance of the evidence, thus leaving us under no obligation to consider the issue. *See Rivera-Platte v. First Colony Life Ins. Co.*, 2007-NMCA-158, ¶ 28, 143 N.M. 158, 173 P.3d 765 (declining to address an issue that was not briefed on appeal). In sum, neither the Department's regulations nor the case law cited by Skowronski supports a holding that the Secretary exceeded her authority by making her own credibility or fact-based determinations. We see no basis for reversal in this regard.

**Due Process**

**{33}** The question whether due process was violated is a question of law that we review de novo. *Gurule*, 2010-NMSC-006, ¶ 5. State revocation of a professional or occupational license requires procedural due process. *See Bell v. Burson*, 402 U.S. 535, 539 (1971) (stating that licenses are not to be taken away without the procedural due process required by the Fourteenth Amendment); *see also Barry v. Barchi*, 443 U.S. 55, 69-70 (1979) (Brennan, J., concurring) (stating that due process applies even more particularly to a revocation of an occupational license). A procedural due process analysis involves consideration of three factors.

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

12

requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Bd. of Educ. of Carlsbad Mun. Sch. v. Harrell*, 118 N.M. 470, 478, 882 P.2d 511, 519 (1994) (recognizing the three *Mathews* factors).

**{34}** Skowronski contends that "[t]he most serious [d]ue [p]rocess violation occurred as a result of the Secretary's overruling the [h]earing [o]fficer's credibility findings[] without the opportunity . . . to observe the witnesses' demeanor." In support of this contention, Skowronski calls our attention to a number of cases containing language that is ostensibly helpful, yet actually are unpersuasive in the context of his due process argument. For example, we do not find persuasive Skowronski's citation to dicta from cases in which courts from other jurisdictions described their respective standards of review applicable to appeals from administrative agency decisions and did not consider due process arguments. *See, e.g.*, *Dep't of Health & Welfare v. Sandoval*, 742 P.2d 992, 995-96 (Idaho Ct. App. 1987); *Md. Comm'n on Human Relations v. Kaydon Ring & Seal, Inc.*, 818 A.2d 259, 275-76 (Md. Ct. Spec. App. 2003); *McEwen v. Tenn. Dep't of Safety*, 173 S.W.3d 815, 821-23 (Tenn. Ct. App. 2005).

**{35}** Additionally, Skowronski's reliance on *In re Villeneuve*, 709 A.2d 1067 (Vt. 1998), is misplaced. In *In re Villeneuve*, the Vermont Supreme Court followed the majority rule that, generally, due process only requires that board members or administrative officers, who were not present when testimony was taken, review the testimony before participating in an administrative decision. *See id.* at 1070. Based on the particular facts of *In re Villeneuve*, which involved a determination by the New Motor Vehicle Arbitration Board that a new vehicle was not a "lemon" and that the purchaser of the vehicle was, therefore, not entitled to a refund, the court noted that members of the board who were absent from the hearing, and therefore did not personally view or test drive the vehicle, prevented the absent members from participating in the board's decision. *Id.* at 1068, 1070-71. The court agreed with the lower court that "the view and test drive must have been important to the board majority's evaluation that the defects and warranty non[-]conformities did not 'substantially impair the use, market value[,] or safety of the vehicle.' " *Id.* at 1070. Thus, in *In re Villeneuve*, the record "did not provide a reasonable basis for evaluating the evidence" because the board's decision depended upon its inspection and test drive of the vehicle. *Id.* (internal quotation marks omitted). In *In re Villaneuve*, insofar as the board's decision did not depend upon witness testimony or credibility determinations, does not stand for the proposition that the dictates of due process demand that credibility determinations are made based on personal observation of a witness's demeanor, and Skowronski's argument is not buttressed by this case.

**{36}** Of Skowronski's numerous citations, three cases are on point insofar as they discuss due process claims in the context of appeals from administrative decisions: *Hearne v. Chicago School Reform Board of Trustees*, 749 N.E.2d 411 (Ill. App. Ct. 2001); *Stanley v. Review Board of Department of Employment & Training Services*, 528 N.E.2d 811 (Ind. Ct. App. 1988); and *Appeal of Dell*, 668 A.2d 1024 (N.H. 1995). Nevertheless, we do not believe these cases provide a basis for reversing the Secretary's decision.

13

**{37}** The *Hearne*, *Stanley*, and *Appeal of Dell* courts all recognized that, generally, administrative boards are at liberty to reject the recommendations of their hearing officers, based on a review of the evidence of record and transcripts, provided that the board adequately explains its conclusions; however, they explained that an exception to the general rule is warranted where credibility alone is the determinative factor. *Hearne*, 749 N.E.2d at 421, 425-26; *Stanley*, 528 N.E.2d at 813-14; *Appeal of Dell*, 668 A.2d at 1033-34.

**{38}** Yet the *Hearne*, *Stanley*, and *Appeal of Dell* courts also recognized that such an exception is narrowly limited to those cases in which it is clear that the board either failed to adequately support its decision with references to the record, *Hearne*, 749 N.E.2d at 426, or where a review of the record could not support such a determination because demeanor credibility was the only basis from which the fact-finder could draw a conclusion as to who was being honest. *See Stanley*, 528 N.E.2d at 815 (stating that the board "[h]aving never heard or seen the witnesses, having no first hand perception of the manner in which they offered their testimony, and having *no other evidence from which to discern the truthfulness of the witnesses' statements*, the board nevertheless rejected the referee's findings in favor of its own groundless opinion of demeanor credibility" thereby "essentially [denying] the parties the right to be heard" (emphasis added)); *Appeal of Dell*, 668 A.2d at 1034 (explaining that "members of the hearing panel acting as fact[-]finders must be present for testimony . . . that concerns the disputed factual basis of a complaint where determination of those disputed facts rests, in some material part, on the fact[-]finder's assessment of their credibility, as shown by their demeanor or conduct at the hearing[,]" but recognizing an exception to that rule which is applicable to cases in which the board can evaluate the evidence in the record by employing its own expertise and technical judgment to the facts therein (omission in original) (internal quotation marks and citation omitted)).

**{39}** Here, although the hearing officer indicated in his proposed findings of fact that "the demeanor of the witnesses while testifying" was one factor that led to his proposed decision in favor of Skowronski, the hearing officer did not base his determination exclusively on this factor. The Secretary, on the other hand, based her decision on the facts presented by the various witnesses, the contradictions therein, and upon the Victim's written statement. The Secretary's conclusions were supported by the record and were based on her analysis of the facts and factual contradictions that were discernable from her review of the transcript and from the Victim's written statement. We are not persuaded that the facts of this case fit the narrow "on credibility alone" exception recognized by the courts in *Hearne*, *Stanley*, and *Appeal of Dell*.

**{40}** In sum, the Secretary's determination in this case was permissible under New Mexico law, and we are not persuaded that case law from other jurisdictions compels a different conclusion. *See Melrose*, 106 N.M. at 131, 740 P.2d at 125 (explaining that even in those cases in which the decision turns on the credibility of witnesses, fundamental fairness and due process may be met provided that the board reviews the entire record). We conclude that the administrative procedure used here did not create a risk of erroneous deprivation of Skowronski's occupational license. *See Mathews*, 424 U.S. at 335. Accordingly, we hold that Skowronski was not deprived of his right to due process by the fact that the Secretary failed to

14

observe the witnesses' demeanor or by her failure to defer to the hearing officer's proposed findings of fact.

**{41}** Through his remaining due process arguments, Skowronski attempts to support his due process deprivation claim with claims of the Department's and the Secretary's bias. The claims of bias are speculative and unsupported by the record. As such, we decline to consider them. *See Santa Fe Exploration Co. v. Oil Conservation Comm'n*, 114 N.M. 103, 108, 835 P.2d 819, 824 (1992) (declining to consider arguments based on factual allegations that are unsupported by citation to the record proper).

**{42}** Also unavailing is Skowronski's claim, based on *Giglio v. United States*, 405 U.S. 150, 154 (1972), that he was deprived of due process because the Department did not reveal to the hearing officer "serious discrepancies" between the Victim's statements contained in the Department's investigative file and her sworn testimony. First, Skowronski does not show that *Giglio*, which stems from and applies to criminal prosecutions, has ever been or should now be applied in the context of an administrative hearing. *See id.* (explaining that in a criminal case, the prosecution must disclose evidence which might alter the fact-finder's judgment of the credibility of a crucial prosecution witness). Second, even were we to assume that the Department's failure to reveal these "serious discrepancies" to the hearing officer created a "risk of an erroneous deprivation" of Skowronski's license, any potential risk was negated by the hearing officer's impression of the veracity of the Victim. *See Mathews*, 424 U.S. at 334-35 (stating that the risk of an erroneous deprivation of a private interest through the procedures used is considered, among other factors, in analyzing a due process argument). Because the hearing officer believed Skowronski and did not believe the Victim, we do not see how the "potential safeguard" of requiring the Department to point to additional evidence that tended to show that the Victim was untruthful would have had a material bearing on the hearing officer's result. *See id.* (stating that, in examining a procedural due process argument, courts should consider "the probable value, if any, of additional or substitute procedural safeguards"). This argument does not provide a basis for reversal.

**{43}** Skowronski's final due process claim is that the district court erred in denying him the opportunity to pursue further discovery, under the court's original jurisdiction, contrary to *Maso v. State Taxation & Revenue Department*, 2004-NMCA-025, 135 N.M. 152, 85 P.3d 276, and despite Skowronski's allegations of bias and political motivation. Skowronski argues that, as in *Maso*, his contentions regarding the Department's bias in regard to teachers accused of sexual misconduct, based simply upon the accusation, could not be "brought up" in the administrative proceedings over which the Department presided, nor could he have obtained discovery at that level to pursue a contention of bias. Skowronski argues that the district court had exclusive jurisdiction to consider the constitutional due process claim in the first instance and that the district court had "no constitutional authority . . . to 'decline' to accept general jurisdiction over an allegation that an agency proceeding violated [d]ue [p]rocess, any more than a district court may decline to hear any complaint within its general jurisdiction." Yet Skowronski does not seek reversal on a separate and distinct ground that the district court erred in denying his request for discovery under a theory that the court had general jurisdiction to do so. Rather, he indicates

only that the district court's decision to " 'decline[] to invoke its original jurisdiction' is particularly troubling" as some sort of extension of his point on appeal that he was denied due process by the Department and the Secretary. We fail to see the connection.

**{44}** In sum, Skowronski's claimed due process violations are variously unsupported by law or the record. As such, they do not provide a basis for reversal. We hold that Skowronski's due process right was not violated by the Department, the Secretary, or the district court.

### III.  The Secretary's Decision and Order Was Supported by Substantial Evidence

**{45}** Skowronski contends that the Secretary's decision is not supported by substantial evidence. The district court reviews an agency's final decision. Section 39-3-1.1; *see also* § 61-1-17 ("A person entitled to a hearing provided for in the . . . Licensing Act . . ., who is aggrieved by an adverse decision of a board issued after hearing, may obtain a review of the decision in the district court pursuant to the provisions of Section 39-3-1.1[.]").

**{46}** The district court addressed in detail the evidence on which the Secretary relied, and "[u]nder the applicable standard of review, the [c]ourt . . . affirm[ed] the Secretary's decision." By "decision," the court presumably meant, as it stated at the beginning of its decision, "the decision by the . . . Department, acting through the . . . Secretary . . ., to revoke [Skowronski's] teaching license[.]" Pursuant to Section 39-3-1.1(D), Section 61-1-17, and also Rule 1-074, under its review standard, the district court is limited to deciding whether the administrative agency acted fraudulently, arbitrarily, or capriciously; whether, based on a review of the whole record, its decision is supported by substantial evidence; whether the agency acted in accordance with the law; or whether its action was outside the scope of the authority of the agency. *Paule v. Santa Fe Cnty. Bd. of Cnty. Comm'rs*, 2005-NMSC-021, ¶ 26, 138 N.M. 82, 117 P.3d 240. The scope and standard of our review of a decision of an administrative agency is the same as the scope and standard of review of that decision by the district court, although we, at the same time, determine whether the district court erred in its review. *Id.*; *Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 16, 133 N.M. 97, 61 P.3d 806.

**{47}** An administrative decision will be upheld if the reviewing court is satisfied that there is substantial evidence in the record as a whole to support the agency's decision and that the evidence in the record demonstrates that the decision is reasonable. *Santa Fe Exploration Co.*, 114 N.M. at 114, 835 P.2d at 830. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" reached by the fact-finder. *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 28, 142 N.M. 533, 168 P.3d 105 (internal quotation marks and citation omitted); *see N.M. Mining Ass'n v. N.M. Water Quality Control Comm'n*, 2007-NMCA-010, ¶ 30, 141 N.M. 41, 150 P.3d 991 (stating that "[s]ubstantial evidence is evidence that a reasonable mind would recognize as adequate to support the conclusions reached by a fact-finder"). Whole record review requires the appellate courts to "look not only at the evidence that is favorable, but also evidence that is unfavorable to the agency's determination[,]" *Fitzhugh v. N.M. Dep't of Labor*, 1996-NMSC-044, ¶ 23, 122 N.M. 173, 922 P.2d 555, and to then decide whether, on balance, the agency's

decision was supported by substantial evidence. *Trujillo v. Emp't Sec. Dep't*, 105 N.M. 467, 469, 734 P.2d 245, 247 (Ct. App. 1987). Finally, we note that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* at 470, 734 P.2d at 248 (internal quotation marks and citation omitted).

**{48}** To the extent that Skowronski's sufficiency of the evidence claim rests upon his contention that the Secretary's decision was not supported by substantial evidence and was crucially faulty because she did not observe the demeanor of the witnesses, we are not persuaded. Having already rejected the premise upon which this argument is based, namely that the Secretary should have deferred to the hearing officer's credibility determinations and that she erred in substituting her own credibility findings for those of the hearing officer, we will not consider them for a second time. The Secretary was permitted to deviate from the hearing officer's proposed findings provided that her deviation was supported by a preponderance of the evidence and that it was based upon a review of the hearing transcripts. 6.68.3.13(B) NMAC. Further, the Secretary was permitted to make credibility determinations based on an independent review of the record. *See Melrose*, 106 N.M. at 131, 740 P.2d at 125 (indicating that credibility determinations can be made from a review of the record). And the Secretary was expressly not to act in an appellate capacity but as an independent adjudicator. 6.68.3.13(B) NMAC.

**{49}** Additionally, we reject Skowronski's related contention that "[t]he question before the [d]istrict [c]ourt was not merely whether there was substantial evidence to support the Secretary's finding that [Skowronski] molested [the Victim], but whether there was substantial evidence to support the Secretary's rejection of the [h]earing [o]fficer's finding that [the Victim's] demeanor signaled to the [h]earing [o]fficer that her testimony was false." This argument advances a standard of review that does not exist, and Skowronski cites no authority to support the standard. We will not adopt it. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that an appellate court will not consider an issue if no authority is cited in support of the issue and will assume that no such authority exists). Furthermore, Skowronski's argument is essentially that the Secretary improperly substituted her own credibility determinations for those of the hearing officer, and we have held against Skowronski on that issue.

**{50}** Having reviewed the Secretary's decision under the standard of review set forth earlier in this Opinion, the district court concluded that "[w]hile the [c]ourt disagrees with the [Secretary] about some of the particulars, there is still sufficient evidence to support what the Secretary decided. Under the applicable standard of review, the [c]ourt must affirm the Secretary's decision." Having reviewed the whole record, we agree with the determination of the district court. The Secretary's decision was supported by substantial evidence, particularly by the Victim's testimony and written statement. Notwithstanding the existence in the record of facts that were supportive of Skowronski's position, we cannot on this record conclude that the Secretary's decision was not supported by substantial evidence. *See Trujillo*, 105 N.M. at 470, 734 P.2d at 248 (stating that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by

substantial evidence" (internal quotation marks and citation omitted)).

**CONCLUSION**

**{51}**    We affirm.

**{52}    IT IS SO ORDERED.**

                                       _____

                                       **JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**RODERICK T. KENNEDY, Judge**

_____

**MICHAEL E. VIGIL, Judge**

**Topic Index for *Skowronski v. N.M. Pub. Educ. Dep't*, No. 31,119**

**ADMINISTRATIVE LAW AND PROCEDURE**
Administrative Appeal
Due Process
Hearings
Investigations
Judicial Review
Sufficiency of Evidence

**APPEAL AND ERROR**
Prejudicial Error
Substantial or Sufficient Evidence

**CONSTITUTIONAL LAW**
New Mexico Constitution, General

**GOVERNMENT**
Education and Schools
Licensing

**STATUTES**
Legislative Intent