907 P.2d 190

**STATE of New Mexico, ex rel., Attorney General Tom UDALL, Plaintiff–Respondent,**

v.

**PUBLIC EMPLOYEES RETIREMENT BOARD, and each member of the Board in his or her official capacity, Ben D. Altamirano, et al., Defendants–Petitioners.**

No. 22279.

Supreme Court of New Mexico.

Nov. 22, 1995.

Carpenter, Comeau, Maldegen, Brennan, Nixon & Templeman, Richard N. Carpenter, Michael R. Comeau, Jon J. Indall, Santa Fe, Campos & Sanchez, Daniel Sanchez, Santa Fe, for Petitioners.

Tom Udall, Attorney General, Robert Tabor Booms, Constance Fuqua, Assistant Attorneys General, Santa Fe, for Respondent.

## *OPINION*

FROST, Justice.

Defendants–Petitioners appeal from the Court of Appeals decision finding the Legislative Retirement Plan, NMSA 1978, §§ 10–11–39 to –43 (Repl.Pamp.1992), unconstitutional. The Court of Appeals held that legislative retirement benefits constituted compensation in violation of Article IV, Section 10 of the New Mexico Constitution, which proscribes payment of any other compensation to legislators beyond their per diem and mileage allowance. *State ex rel. Udall v. Public Employees Retirement Bd.*, 118 N.M. 507, 511, 882 P.2d 548, 552 (Ct.App.1994). We issued a writ of certiorari, *see* NMSA 1978, § 34–5–14(B)(3) (Repl.Pamp.1990) (significant question of constitutional law), and we now reverse.

## I. FACTS

In 1963 the Legislature enacted the Legislative Retirement Plan (Plan). 1963 N.M.Laws, ch. 102, § 1 (codified as amended NMSA 1978, §§ 10–11–39 to –43 (Repl. Pamp.1992)). The current version of the Plan requires that a legislator contribute $100 per year in order to earn service credits and receive benefits. Section 10–11–42. Participation in the Plan is voluntary. Section 10–11–3(B)(1), (2). Upon retirement, a legislator is entitled to receive an annual retirement benefit of $250 multiplied by the number of years of acquired earned-service credits, if the legislator served after December 31, 1959.[1] Section 10–11–41(A). A legislator must acquire at least five years of earned service credits in order to be eligible for the benefits and must meet specific age requirements based on the number of years served. Section 10–11–40. Therefore, a legislator who serves only a single term is not eligible to receive retirement benefits under the Plan.[2]

The New Mexico Constitution provides:

Each member of the legislature shall receive:

A. as per diem expense the sum of not more than seventy-five dollars ($75.00) for each day's attendance during each session, as provided by law, and twenty-five cents ($.25) for each mile traveled in going to and returning from the seat of government by the usual traveled route, once each session as defined by Article 4, Section 5 of this constitution;

B. per diem expense and mileage at the same rates as provided in Subsection A of this section for service at meetings required by legislative committees established by the legislature to meet in the interim between sessions; and

C. no other compensation, perquisite or allowance.

N.M. Const. art. IV, § 10. Although the per diem and mileage allowances have periodically been increased, the prohibition against receiving other compensation has remained unchanged since its initial adoption by the framers of our Constitution in 1911.

The constitutionality of the Plan was first challenged by a group of taxpayers in 1976. However, the suit was dismissed for lack of standing. *Eastham v. Public Employees' Retirement Ass'n Bd.*, 89 N.M. 399, 406, 553 P.2d 679, 686 (1976). In 1987 the Attorney General commenced this action against the Public Employees Retirement Board (PERB) and various current and former members of the Legislature who participated in the Plan. The Attorney General argued that the Plan violated Article IV, Section 10 of the New Mexico Constitution and sought injunctive relief both barring future payments by PERB under the Plan and requiring repayment of disbursements already made to retired legislators.

---

1. If the legislator completed service before January 1, 1960, he or she is entitled to an annual benefit of $40 multiplied by the number of years of acquired earned service credits. Section 10–11–41(B).

2. Members of the State Senate are elected for a term of four years and members of the House of Representatives are elected for a term of two years. N.M. Const. art. IV, § 4.

In 1988 the district court held the Plan unconstitutional and ordered PERB to stop making payments to retired legislators under the Plan. Several defendants appealed from the order. The Court of Appeals, however, dismissed the appeal on the ground that the trial court's order was not a final, appealable order because it did not resolve the Attorney General's claim for restitution of payments already made, and the Court remanded the case. Prior to the remand, however, a new district judge had succeeded the judge who originally issued the order. On remand, the successor district judge vacated the original order because the Attorney General had failed to join certain indispensable parties. The judge allowed the joinder of the additional parties and, in 1993, issued a new order ruling that the Plan was constitutional.

The Attorney General appealed both the decision to vacate the 1988 order and the subsequent ruling that the Plan was constitutional. The Court of Appeals upheld the district court's authority to vacate the 1988 order but reversed the court's holding on the constitutionality of the Plan. *Udall*, 118 N.M. at 511, 882 P.2d at 552. The legislators participating in the Plan then filed a petition for writ of certiorari challenging the Court of Appeals' conclusion that the Plan was unconstitutional. We granted the petition and issued the writ of certiorari to review the constitutional issue. *State ex rel. Udall v. Public Employees Retirement Bd.*, 118 N.M. 695, 884 P.2d 1174 (1994).

## II. DISCUSSION

■ As we noted in *Espanola Housing Authority v. Atencio*, 90 N.M. 787, 788, 568 P.2d 1233, 1234 (1977), "It is well settled that there is a presumption of the validity and regularity of legislative enactments." Indeed, we must uphold such enactments unless we are satisfied beyond all reasonable doubt that the Legislature went outside the bounds fixed by the Constitution in enacting the challenged legislation. *Id.; State v. Ball*, 104 N.M. 176, 178, 718 P.2d 686, 688 (1986); *State v. Trivitt*, 89 N.M. 162, 167, 548 P.2d 442, 447 (1976); *City of Raton v. Sproule*, 78 N.M. 138, 142, 429 P.2d 336, 340 (1967).[3] It is not the province of this Court to inquire into the wisdom or policy of an act of the Legislature. *Atencio*, 90 N.M. at 788, 568 P.2d at 1234. With this standard of review in mind, we turn to the merits of the constitutional challenge.

### A. Standards Employed in Other Jurisdictions

■ The question before us is whether the terms "compensation, perquisite or allowance" encompass legislative retirement benefits. Although there is no New Mexico case specifically addressing this question, there are several cases from other jurisdictions which are directly on point.

In *Brown v. Meyer*, 787 S.W.2d 42 (Tex. 1990), the Supreme Court of Texas confronted a similar question of constitutional interpretation. Brown, while acting as a State Senator, voted to increase the salaries of district court judges. *Id.* at 43. Because the retirement benefits paid to qualified elected officials in Texas were indexed to the salaries of state judges, the Senate vote had the effect of increasing retirement benefits for elected state officials. Brown then left the State Senate and attempted to run for the position of State Attorney General. *Id.* If he became Attorney General, Brown eventually may have been eligible to receive the retirement benefits that he had just voted to increase. However, the Texas Constitution provided that a state legislator is not eligible to run for a state office "the emoluments of which may have been increased" during that legislator's term.[4] *Id.* at 44.

---

3. Although we have generally applied the "beyond a reasonable doubt" standard of review in evaluating legislative enactments, this Court adopted a "rational basis" standard of review in determining whether a constitutional amendment or bond proposition embraces only one subject. *See State ex rel. Clark v. State Canvassing Bd.*, 119 N.M. 12, 15, 888 P.2d 458, 461 (1995); *Ryan v. Gonzales*, 114 N.M. 346, 348,

838 P.2d 963, 965 (1992); *State ex rel. Chavez v. Vigil–Giron*, 108 N.M. 45, 47, 766 P.2d 305, 307 (1988).

4. The New Mexico Constitution contains a similar provision that states, "No member of the legislature shall, during the term for which he was elected, be appointed to any civil office in the state, nor shall he within one year thereafter

The *Brown* court examined whether retirement benefits constituted "emoluments" to determine whether the constitutional provision affected Brown's eligibility for the office of Attorney General. It held that the term emoluments, as used in the constitution, meant "only actual pecuniary gain and not contingent and remote benefit." *Id.* at 45. The court explained,

> Whether a party will actually receive a retirement benefit is dependent on numerous variables. An employee must agree to participate in the program, requiring withholding of salary.... Also, the employee must accumulate the requisite number of years "service credit" before any benefit can vest. In the case of an elected official, this will generally require not only serving a full term, but also reelection to office. And the official must remain alive until the earliest time that benefits may vest.

*Id.* The *Brown* court therefore concluded that "retirement benefits for legislators and other elected officials are not embraced within the term 'emoluments' as used in [the constitution]." *Id.*

Another leading case which evaluated whether retirement benefits were encompassed within a similar constitutional provision is *State ex rel. Todd v. Reeves*, 196 Wash. 145, 82 P.2d 173 (1938) (en banc). In *Reeves* the plaintiffs challenged a State Senator's qualifications to run for the Washington Supreme Court because the Legislature had enacted a retirement system for the judiciary. *Id.* 82 P.2d at 174. The Washington State Constitution had a provision similar to that found in the Texas Constitution, prohibiting a legislator from running for an office after increasing the "emoluments" of that office. *Id.* The *Reeves* court noted that "emolument" is generally defined as "profit from office, employment, or labor; compensation; fees or salary." *Id.* at 175 (referring to a dictionary definition). It then found that "the word [emolument] was employed in the constitution in its ordinary sense, as implying actual pecuniary gain, rather than some imponderable and contingent benefit." *Id.*

After defining emolument, the court reviewed the nature of retirement benefits. It noted that in order for the respondent to be eligible for the benefits, he would first have to be elected to the court for a second term, and he would have to survive to the age of seventy. Accordingly, the court concluded that "[w]hile the provision for retirement makes the office more attractive," it does not constitute an emolument in violation of the constitutional provision. *Id.*

We note that this approach has been adopted by courts in several other jurisdictions. *See, e.g., Bulgo v. Enomoto*, 50 Haw. 61, 430 P.2d 327, 330 (1967) (finding disability benefits to be too remote and contingent to constitute compensation (citing *Reeves*, 82 P.2d at 175)); *State ex rel. Lyons v. Guy*, 107 N.W.2d 211, 218–19 (N.D.1961) (noting that increase in percentage of governor's social security tax paid by the state is too remote to constitute an emolument under the constitution); *State ex rel. Johnson v. Nye*, 148 Wis. 659, 135 N.W. 126, 129 (1912) (constitutional disqualification based on increase in emoluments cannot be based on conjecture or speculation). *But see State ex rel. Spire v. Public Employees Retirement Bd.*, 226 Neb. 176, 410 N.W.2d 463, 466 (1987) (finding legislative pension plan was a form of compensation and therefore violated the constitutional limitation). *Cf. Chamber of Commerce v. Leone*, 141 N.J.Super. 114, 357 A.2d 311, 319–21 (1976) (finding legislative pension plan constituted present compensation for services), *aff'd*, 75 N.J. 319, 382 A.2d 381 (1978); *Boryszewski v. Brydges*, 37 N.Y.2d 361, 372 N.Y.S.2d 623, 626–27, 334 N.E.2d 579, 582–83 (1975) (same). We recognize that these cases interpreted constitutional provisions addressing *increases* in compensation. Nonetheless, we find that the analysis employed is equally applicable to the constitutional provision in this case which limits compensation received.

Indeed the West Virginia Supreme Court, in *Campbell v. Kelly*, 157 W.Va. 453, 202 S.E.2d 369, 375–76 (1974), adopted the approach expressed in *Reeves* in evaluating a

be appointed to any civil office created, or the emoluments of which were increased during

such term...." N.M. Const. art. IV, § 28.

constitutional challenge almost identical to the one brought here. In *Campbell* the court examined whether a legislative retirement plan violated a section of the state constitution. It analyzed the constitutionality of the retirement plan both under the original constitutional provision in place when the retirement plan was enacted and under the provision as subsequently amended by the electorate. Only the court's analysis of the retirement plan under the original constitutional provision prior to amendment is relevant to our discussion because it is the original constitutional provision that is similar to Article IV, Section 10 of the New Mexico Constitution.

The original provision of the West Virginia Constitution stated in relevant part, "No other allowance or emolument than [the sum provided by this section] shall directly or indirectly be made or paid to the members of either house for postage, stationery, newspapers, or any other purpose whatever." *Id.* 202 S.E.2d at 373 (emphasis omitted). The *Campbell* court first conducted a historical analysis of the original constitutional provision and then looked to the established precedent of other jurisdictions. The court noted:

> This Court is persuaded that in the absence of evidence that it was the intent of the framers of our Constitution by Section 33 to prohibit pension plans under conditions as they have changed in the last century, our Constitution should be interpreted in conformity with the great weight of precedent from other jurisdictions interpreting similar provisions of other state constitutions. All the modern decisions interpreting the power of legislators to enact pension programs hold that constitutional limitations on "allowances" or "emoluments" do not apply to pension programs.

*Id.* at 375. The court therefore concluded that the legislative retirement plan was constitutional under the original provision. *Id.* at 377.

## B. The Court of Appeals' Analysis Rebutted

In the present case, however, the Court of Appeals, reached the opposite conclusion,

finding that the New Mexico legislative retirement plan violated Article IV, Section 10. *Udall*, 118 N.M. at 511, 882 P.2d at 552. The Court of Appeals defined the term compensation as "something given or received as an equivalent for services," *id.* (referencing a dictionary definition), and concluded that the retirement benefits were something given in return for a legislator's years of service.

However, in defining the term compensation and applying this definition to the retirement benefits, the Court of Appeals did not consider the contingent nature of retirement benefits as identified by the other jurisdictions that addressed this issue. To the contrary, the Court of Appeals expressly rejected the "remoteness" approach adopted by these other jurisdictions. As support for rejecting this remoteness analysis, the Court identified several points that it believed distinguished *Campbell, Brown,* and *Reeves* from the present challenge. However, after reviewing the points of distinction identified by the Court of Appeals, we conclude that the remoteness analysis employed in *Campbell, Brown,* and *Reeves* is the correct approach and is dispositive in this case.

First, the Court of Appeals distinguished the *Campbell* case based on its use of historical analysis. The Court of Appeals suggested that, in upholding the West Virginia legislative retirement plan under the *original* provision, the *Campbell* court relied solely on a historical analysis of the terms "allowance or emolument" based on the prevailing conditions at the time their constitution was originally adopted. *Udall*, 118 N.M. at 518, 882 P.2d at 559. Thus the Court of Appeals found that the *Campbell* court's holding regarding the scope of the terms allowance and emolument in the original provision was limited to the historical context found in West Virginia. *Id.* The Court of Appeals then suggested that the *Campbell* court ultimately concluded that pension plans were not too remote to constitute compensation under a "modern and broadened" view of the term and were therefore unconstitutional. *Id.* However, the Court of Appeals misconstrued *Campbell.*

As noted above, the *Campbell* court was faced with two separate questions, first

whether the legislative retirement plan was constitutional under the original constitutional provision, and second whether the plan remained constitutional after the constitutional provision was amended by abandoning the original language and creating a Legislative Compensation Commission to control legislative salaries. *Campbell,* 202 S.E.2d at 373. The court concluded that the plan did not violate the original constitutional provision but that it did violate the amended provision.

In examining the constitutionality of the plan prior to the amendment, the court conducted a two-pronged examination. It first looked to whether the original framers of the constitution intended to bar legislative retirement plans. *Id.* at 374–75. The court concluded that there was no evidence supporting this intent. It then went on to examine how other courts had interpreted similar constitutional provisions and, by applying that precedent, found the plan constitutional. *Id.* at 375–77. Accordingly, the court reached its conclusion that retirement plans were too remote and contingent to constitute "allowances" or "emoluments" under the original provision by looking to the law established by other jurisdictions rather than relying solely on a historical analysis of the intent of the framers of the West Virginia Constitution, as suggested by the Court of Appeals. *See id.* at 375 ("This Court is persuaded that in the absence of evidence that it was the intent of the framers ... to prohibit pension plans ..., our Constitution should be interpreted in conformity with the great weight of precedent from other jurisdictions. . . .").

The Court of Appeals also pointed to the *Campbell* court's rejection of the legislative pension plan under the amended constitutional provision as demonstrating that retirement plans constitute "compensation" under a "modern and broadened" reading of the term. *Udall,* 118 N.M. at 518, 882 P.2d at 559. However, the amendment substantially altered the restrictions that were laid out in the original provision. As a result, the amended provision differed considerably from Article IV, Section 10 of the New Mexico Constitution, which had paralleled the original provision.

In analyzing the newly amended provision, the *Campbell* court was compelled to construe the terms of the amendment in light of the recorded legislative history and popular sentiment surrounding the amendment and the retirement plan already in existence before the amendment. The court held that "there [was] persuasive evidence that the amendment ... was, at least in part, propelled by that controversy [generated by the legislative retirement plan]." *Campbell,* 202 S.E.2d at 378. It therefore found that the amendment was specifically created to govern pension plans in addition to setting legislative salaries. Thus the court's approach to the amended provision does not represent a modern reading of the term "compensation," but instead represents an analysis of an entirely new constitutional requirement with distinct factual underpinnings.

In this case, however, we are not faced with a recent amendment to the constitution specifically directed at controlling legislative retirement plans. As with the first part of the *Campbell* court's analysis, we are examining whether the Plan is constitutional under a provision of the New Mexico Constitution essentially unchanged since its creation. Accordingly, we find that the *Campbell* court's analysis of retirement benefits under its original constitutional provision is directly on point to the issues before us and that its subsequent discussion of the amended provision is not relevant to our analysis.

The Court of Appeals also disregarded the *Brown* and *Reeves* line of cases, finding them inapplicable to the present case. The Court of Appeals identified two points of distinction which it believed rendered these cases inapposite. However, our review of these points leads us to conclude that the cases are applicable to, and in fact dispositive of, the issues in the present dispute.

The first distinction the Court of Appeals identified was that *Brown* and *Reeves* addressed a different constitutional provision, which prevented a legislator from assuming a political office if the Legislature had increased the emoluments of that office during the legislator's term. The Court of Appeals noted that public policy favors providing opportunity to seek public office and that the

constitutional provisions in those cases created prohibitions on public service which were contrary to that public policy. *Udall,* 118 N.M. at 517, 882 P.2d at 558. Accordingly, the Court took the position that the constitutional provisions in *Brown* and *Reeves* should be strictly construed to limit restrictions on seeking and holding office, whereas Article IV, Section 10 should not. *Id.* (quoting *Brown,* 787 S.W.2d at 45).

However, the Court of Appeals failed to appreciate that, while New Mexico's constitutional limit on legislative compensation is not directly aimed at restricting access to public office, it certainly has that practical effect. A direct consequence of our reliance on a part-time, citizen-based Legislature is that an individual who wishes to hold public office in the Legislature must leave work for two months and live in Santa Fe on the legislative per diem allowance. However, it is the grass-roots, populist nature of our Legislature that is its defining characteristic, as well as one of its strongest assets, and any constitutional provision which has the effect of limiting the citizens' access to office should be narrowly construed as if it directly restricted the right to seek and hold public office. Accordingly, the presumptions employed in *Brown* and *Reeves* are equally applicable in this case.

As a second point of distinction, the Court of Appeals noted that the constitutional provisions in *Brown* and *Reeves* were directed at removing the incentive for an individual legislator to increase the emoluments of another public office with the improper motive of subsequently assuming that office at a higher salary. *Id.* The Court suggested, however, that the prospect of enjoying the fruits of any improper motive was extremely remote or contingent for the individual legislators in *Brown* and *Reeves,* whereas in the present case the likelihood of the members of the Legislature as a whole enjoying the benefits of the retirement package would be a virtual certainty. *Id.* at 517–18, 882 P.2d at 558–59 (noting that "the force of the improper motivation decreases as the likelihood of enjoying the benefit decreases"). In other words, the Court of Appeals contrasted the remoteness of the benefit to an individual under the constitutional provisions at issue in *Brown* and *Reeves* with the remoteness of the benefit to the Legislature as a whole under Section 10 of Article IV.

However, this distinction is unwarranted. First, Article IV, Section 10 is specifically directed at *individual* legislators, setting out what compensation "[e]ach member of the legislature shall receive." The very language of the provision directs us to look to the nature of the benefit that inures to an individual legislator. In addition, as we noted above, every presumption is indulged in favor of the validity and regularity of the Legislature's enactments. *Atencio,* 90 N.M. at 788, 568 P.2d at 1234. While it is within the province of this Court to determine whether a benefit to a legislator constitutes improper compensation under the Constitution, we will not assume that the Legislature as a whole acted under improper motivations absent evidence beyond a reasonable doubt to the contrary. *Id.* The proper focus is therefore on the remoteness or contingency of the benefit to an individual legislator and not to the Legislature as a whole.

After examining the contentions raised by the Court of Appeals, we conclude that the Court erred in failing to consider the remoteness analysis employed in *Brown, Reeves,* and *Campbell.* We find that these cases are in fact directly on point in the present dispute, and we adopt the analysis utilized by the courts in these cases.

## C. Applying the Remoteness Analysis

We now turn to the question whether the Plan constitutes "compensation, perquisite or allowance" in violation of the Constitution. It is important to note that, although the terms "compensation, perquisite or allowance," as used in our constitutional provision are not necessarily identical to the terms "allowance" or "emolument," as used in *Brown, Reeves,* and *Campbell,* we do not need to specifically define each of these terms to determine the validity of the Plan. It is sufficient that we agree with the conclusions of the other courts and hold that these terms as used in Article IV, Section 10 do not

encompass remote and contingent benefits.[5] *See Brown,* 787 S.W.2d at 45; *Reeves,* 82 P.2d at 175; *Campbell,* 202 S.E.2d at 375–76.

Applying this construction, we find that the benefits for which legislators may be eligible under the Plan are too remote and contingent to constitute compensation, perquisites, or allowances in violation of the Constitution. In order to be eligible to receive any benefits under the Plan, a legislator must agree to participate in the program, allowing for a deduction from his or her per diem allowance. The legislator must also accumulate the requisite number of years of credited service before any benefits will vest. Under the challenged plan, in order to become vested, a legislator not only must serve a full term, but also must win re-election at least once. Finally, the legislator must remain alive until the earliest time that the benefits vest.

We therefore conclude that the legislative retirement benefits paid out under the Plan are not included within the terms "compensation, allowance or perquisite" as used in Article IV, Section 10 of our Constitution. Our holding today is further supported by this Court's decision in *State ex rel. Hudgins v. Public Employees Retirement Board,* 58 N.M. 543, 548, 273 P.2d 743, 746 (1954), in which we rejected a claim that payment of increased benefits to state-employee retirees in exchange for a lump-sum payment violated the constitutional prohibition against paying any "extra compensation" for services already performed. *See also* N.M. Const. art. IV, § 27. In rejecting the claim that additional retirement benefits constituted "extra compensation" under the Constitution, we implicitly acknowledged that retirement benefits do not constitute "compensation" under Article IV, Section 10 of the Constitution.

### III. CONCLUSION

As the Court of Appeals aptly noted, the rewards for the service performed by New Mexico legislators are more personal than monetary. At the same time, given the present mood of political disenchantment among the voters, the Legislature's actions are held up to ever-increasing scrutiny. Critics are quick to ascribe venal motives to any legislative decision which has the effect of benefitting those who hold office. The framers of our Constitution recognized the potential for legislative abuse and accordingly adopted Article IV, Section 10, limiting the compensation legislators may receive, as a means of ensuring that legislators do not act under improper motivations. It is the role of this Court to enforce the dictates of the Constitution in order to further the intent of its provisions. However, when we find no constitutional violation, we will not review the propriety of the legislative action nor examine the motives of the Legislature. As the Arizona Supreme Court noted:

> Federal and State governmental bodies almost without exception have the means with which to misuse their authority. But the safeguard and protection in our democracy is more than equal to any such risk. [Individuals] in positions of governmental authority and responsibility are there as representatives of the people. They are placed in these positions by the people, and can be recalled by them. It is to the people that they must, at all times, answer.

*Earhart v. Frohmiller,* 65 Ariz. 221, 178 P.2d 436, 439 (1947) (upholding constitutionality of statute allowing reimbursement of legislators' expenses).

For the reasons discussed above, the retirement benefits for which legislators may be eligible under the Plan do not constitute legislative compensation. Accordingly, we reverse the Court of Appeals' decision and hold that the Plan does not violate the Constitution.

**IT IS SO ORDERED.**

---

**5.** Both Petitioner and Respondents have presented competing historical arguments as bolstering their respective interpretations of the term "compensation." However, we agree with the Court of Appeals' determination that we need not consider the historical context of Article IV, Section 10 to determine the intent of the framers with respect to the term "compensation." The Constitution is not a static document; it is a living work intended to endure. We need not confine ourselves to an examination of the working conditions of the general populace of 1911 to properly interpret the framers' intent regarding the application of the constitutional limitation on receiving "other compensation, perquisite or allowance."

BACA, C.J., and RANSOM and FRANCHINI, JJ., concur.

MINZNER, J., not participating