# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMCA-025

Filing Date: February 4, 2019

No. A-1-CA-35643

TANYA GIDDINGS, Bernalillo
County Assessor,

    Petitioner-Petitioner,

v.

SRT-MOUNTAIN VISTA, LLC,
ROBERT FOX, and LINDA FOX,

    Respondents-Respondents.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Carl J. Butkus, District Judge

Released for Publication July 2, 2019

Robles, Rael & Anaya, P.C.
Charles H. Rennick
Marcus J. Rael, Jr.
Albuquerque, NM

for Petitioner

Sutin, Thayer & Browne, P.C.
Frank C. Salazar
Larry Curtis Vernon
Albuquerque, NM

for Respondent SRT-Mountain Vista, LLC

Vance, Chavez & Associates, LLC
Claud Eugene Vance
Albuquerque, NM

for Respondents Linda Fox and Robert Fox

## OPINION

**VARGAS, Judge.**

**{1}** On motion of the Bernalillo County Assessor (Assessor), the district court certified this appeal to resolve three issues arising from two consolidated district court cases. First, we conclude the district court has appellate jurisdiction to review decisions of the Bernalillo County Valuation Protests Board (Board) based upon the Assessor's petitions for writs of certiorari. Second, we determine the Assessor to be an aggrieved party, entitling her to review of the Board's decision under Rule 1-075(B) NMRA. Third, we hold that residential property transfers between individuals or their trusts, and their wholly-owned limited liability companies constitute a "change of ownership" as defined by NMSA 1978, Section 7-36-21.2(E) (2010).

## I.   BACKGROUND

**{2}** The consolidated district court cases from which the Assessor appeals arose from separate and unrelated decisions by the Board regarding the properties of two taxpayers. As such, we set forth the relevant factual and procedural backgrounds of each case leading up to consolidation in the district court.

### A.   The SRT-Mountain Vista, LLC Proceeding

**{3}** SRT-Mountain Vista, LLC (SRT) is a New Mexico limited liability company wholly owned by The Philip J. Salley Revocable Trust (Trust) and managed by Philip J. Salley. Prior to April 24, 2013, the SRT subject property was owned by the Trust. On that date, Salley, as trustee of the Trust, executed a special warranty deed granting the subject property to SRT for purposes of refinancing the property.

**{4}** Following the transfer from the Trust to SRT, the Assessor valued the subject property at its "current and correct" taxable value for the 2014 tax year, without applying any limitations on increased value provided for in Section 7-36-21.2(A). SRT protested the Assessor's valuation to the Board, arguing there was no "change of ownership" as defined in Section 7-36-21.2(E), and that the subject property therefore qualified for the limitation on property value accorded by Section 7-36-21.2(A). The Board found "[t]he 2013 warranty deed clearly and indisputably transferred fee ownership from the Trust to the LLC[,]" but that the transfer did not constitute a "change [of] ownership" for purposes of Section 7-36-21.2(E) because "the property had the same ultimate owner owning the property."

### B.   The Robert and Linda Fox Proceeding

**{5}** Robert and Linda Fox created Fox Trust, a revocable inter vivos trust, to serve as the sole owner of various LLCs. Prior to 2013, these LLCs owned the Fox subject properties. On January 23, 2013, and February 5, 2013, the LLCs granted the subject properties to Richard and Linda Fox as joint tenants for purposes of refinancing. After refinancing the properties, Robert and Linda Fox granted the properties back to the various LLCs that previously owned them.

**{6}** Following these conveyances, the Assessor valued the subject properties at their "current and correct" taxable values for the 2014 tax year, without regard to the valuation limitation set forth in Section 7-36-21.2(A). Robert and Linda Fox protested the Assessor's valuation to the Board, arguing that notwithstanding the transfers, there was no "change of ownership" under Section 7-36-21.2(E). The Board found "[t]he 2013 warranty deeds clearly and indisputably transferred fee ownership from the LLCs to [Robert and Linda Fox] and back to the LLCs/Trusts[,]" but that the transfers did not constitute "changes of ownership" within the meaning of Section 7-36-21.2(E) "because in each case the property had the same ultimate owners owning the same proportion of each property."

## C.     The District Court Proceedings

**{7}** After the Board issued its decisions in both cases, the Assessor filed petitions for writs of certiorari in the district court, seeking reversal of the Board's decisions on the grounds that they were arbitrary and capricious and not in accordance with the law. Additionally, the Assessor successfully moved to consolidate both cases.

**{8}** SRT and Robert and Linda Fox (collectively, Respondents) moved to dismiss the Assessor's petition, arguing the Assessor lacked the right to appeal the Board's decision under NMSA 1978, Section 7-38-28(A) (2015) (providing that "[a] property owner may appeal an order made by a hearing officer or a county valuation protests board"), and *Addis v. Santa Fe County Valuation Protests Board*, 1977-NMCA-122, ¶ 6, 91 N.M. 165, 571 P.2d 822 (holding that, for purposes of NMSA 1953, Section 72-31-28(A) (1973) (recompiled and amended as Section 7-38-28), "[t]he county assessor may not appeal the order of the [valuation protests board]; only the property owner may appeal"). Anticipating the Assessor's intent to invoke the district court's power to issue writs of certiorari under Article VI, Section 13 of the New Mexico Constitution, Respondents further argued the Assessor had not made the prima facie showing of entitlement to relief required on direct appeal. Finally, Robert and Linda Fox argued the district court lacked original jurisdiction under Article VI, Section 13 to hear a property tax matter invoking a constitutional claim because the Assessor raised no such claim.

**{9}** Without ruling on the Assessor's petition or Respondents' motions to dismiss, the district court granted the Assessor's motion for certification to this Court to resolve the following issues: (1) whether the district court has jurisdiction to review the Assessor's petition under Article VI, Section 13 of the New Mexico Constitution; (2) whether the Assessor may seek review under Rule 1-075; and (3) whether the transfers at issue constitute "changes of ownership" for purposes of Section 7-36-21.2(E). We accepted certification from the district court.

## II.     DISCUSSION

## A.     The District Court Has Jurisdiction

**{10}** The threshold issue raised by the parties is whether the district court has jurisdiction to review the Assessor's petition for writ of certiorari. The Assessor contends the district court has appellate jurisdiction under Article VI, Section 13 of the New Mexico Constitution, a premise Respondents refute. The question of whether the district court has jurisdiction is a question of law we review de novo. *Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 10, 142 N.M. 786, 171 P.3d 300.

**{11}** Article VI, Section 13 of the New Mexico Constitution grants appellate jurisdiction to the district court in "cases originating in inferior courts and tribunals in their respective districts. . ., and supervisory control over the same[,]" and confers upon the district court the "power to issue writs of . . . certiorari . . . in the exercise of their jurisdiction; provided that no such writs shall issue directed to judges or courts of equal or superior jurisdiction." *Id.*

**{12}** "A writ of certiorari lies when it is shown that an inferior court or tribunal has exceeded its jurisdiction or has proceeded *illegally*, and no appeal or other mode of review is allowed or provided." *Zamora v. Vill. of Ruidoso Downs*, 1995-NMSC-072, ¶ 17, 120 N.M. 778, 907 P.2d 182 (omission, internal quotation marks, and citation omitted). Our Supreme Court "has long held that certiorari is the appropriate process to review the proceedings of bodies acting in a judicial or quasi-judicial character[.]" *Id.* ¶ 18 (omission, alterations, internal quotation marks, and citation omitted); *See* Rule 1-075(A) ("This rule governs writs of certiorari to administrative officers and agencies pursuant to the New Mexico Constitution when there is no statutory right to an appeal or other statutory right of review."). County valuation protests boards are quasi-judicial bodies. *See Addis*, 1977-NMCA-122, ¶ 5 ("The [valuation protests board] is a quasi-judicial body."). In the absence of a direct right to appeal from an adverse valuation protests board determination, or other mode of review on behalf of a county assessor, we agree with the Assessor that certiorari is the appropriate means of determining whether the Board exceeded its jurisdiction or proceeded illegally in the underlying agency proceedings. *See* Rule 1-075(G)(2) (requiring the district court to issue a writ of certiorari to review an agency action where several preconditions are met, including that "the petitioner does not have a right to review by appeal."); *Rainaldi v. Pub. Emps. Ret. Bd.*, 1993-NMSC-028, ¶ 8, 115 N.M. 650, 857 P.2d 761 (explaining that "certiorari may be the only method available for reviewing the actions of a state board where no statutory review is provided").

**{13}** It need be emphasized that, pursuant to Section 7-38-28(A), "[a] *property owner* may appeal an order made by a . . . county valuation protests board by filing an appeal pursuant to the provisions of [NMSA 1978,] Section 39-3-1.1" (1999) (emphasis added); *see* § 39-3-1.1(A) ("The provisions of this section shall apply only to judicial review of agency final decisions that are placed under the authority of this section *by specific statutory* reference." (emphasis added)). Indeed, interpreting a prior version of Section 7-38-28, we squarely held that "[t]he county assessor may not appeal the order of the [valuation protests board]; only the property owner may appeal." *Addis*, 1977-NMCA-122, ¶ 6; *see* NMSA 1953, § 72-31-28(A) (1973) ("A property owner may appeal an order made by . . . a county valuation protests board[.]"). We view the unavailability

of a direct appeal on the Assessor's behalf as an essential element of her right to pursue a writ of certiorari, and not, as Respondents would have it, as an absolute bar to the issuance of such a writ. Respondents having cited no direct authority supporting their contrary proposition, we must assume that no such authority exists. *In re Adoption of Doe,* 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329.

## B.      The Assessor Is an Aggrieved Party Under Rule 1-075(B)

**{14}**    Having concluded the Assessor may seek judicial review of the Board's decision by way of a petition for writ of certiorari to the district court, we next address whether the Assessor is an "aggrieved party" as required by Rule 1-075(B), which "governs writs of certiorari to administrative officers and agencies pursuant to the New Mexico Constitution when there is no statutory right to an appeal or other statutory right of review." Rule 1-075(A).

**{15}**    Rule 1-075(B)(1) provides that "[a]n aggrieved party may seek review of a final decision or order of an agency by . . . filing a petition for writ of certiorari in the district court[.]" The rule further requires that the district "court shall issue a writ of certiorari to review the action of the agency if . . . the petition makes a prima facie showing . . . that the petitioner is entitled to relief[.]" Rule 1-075(G)(2). Respondents argue the Assessor is not an aggrieved party under the rule and therefore cannot make a prima facie showing of entitlement to relief.

**{16}**    Generally speaking, an aggrieved party is "a party whose interests are adversely affected." *State v. Nehemiah G.*, 2018-NMCA-034, ¶ 15, 417 P.3d 1175 (internal quotation marks and citation omitted), *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-36974, Apr. 26, 2018). In support of their argument that the Assessor is not an "aggrieved party" and therefore lacks standing, Respondents cite to *State ex rel. Overton v. New Mexico State Tax Commission*, 1969-NMSC-140, ¶ 10, 81 N.M. 28, 462 P.2d 613 (stating, in the context of an action for declaratory judgment, that the county assessor "has no personal stake in the matter"). *Overton* held that a county assessor did not have standing to bring a declaratory judgment action challenging the constitutionality of a tax-exemption statute because no justiciable controversy was present. *See id.* ¶¶ 1, 10, 19. However, as our Supreme Court has since clarified, *Overton*'s holding is properly limited to the facts in that declaratory judgment action, and does not preclude review of a justiciable controversy arising from a taxpayer's "claim of entitlement to a tax exemption." *See El Castillo Ret. Residences v. Martinez*, 2017-NMSC-026, ¶ 18, 401 P.3d 751. Similar to the situation presented in *El Castillo*, a justiciable controversy exists here regarding Respondents' claim of entitlement to the benefit of the limitation on valuation increases set out in Section 7-36-21.2(E), a claim which, as was true of the claim presented in *El Castillo*, is not theoretical in nature and in whose outcome the Assessor "does have an interest." *Id. See* NMSA 1978, § 7-36-2(A) (1995) ("The county assessor is responsible and has the authority for the valuation of all property subject to valuation for property taxation purposes in the county[.]"); NMSA 1978, § 7-36-16(A) (2000) ("County assessors shall determine values of property for property taxation purposes[,] . . . implement a program of updating

property values so that current and correct values of property are maintained[,] and shall have sole responsibility and authority at the county level for property valuation maintenance[.]"); *see also Robinson v. Bd. of Comm'rs of Cty. of Eddy*, 2015-NMSC-035, ¶¶ 10-11, 360 P.3d 1186 ("The Property Tax Code . . . makes a general grant to county assessors of authority over valuation of property. . . . Clearly, the Legislature has reposed in county assessors the responsibility for maintaining a program of updating property values to reflect current and correct values of property." (internal quotation marks and citation omitted)); *cf. Addis*, 1977-NMCA-122, ¶ 5 (concluding that the county assessor, as the party defending the valuation of property, is the adversarial party to the aggrieved property owner). It is the Assessor who is in the best position to challenge the Board's decision limiting her authority in instances where residential properties are transferred between individuals or their trusts and the LLCs created to hold title to those properties. *See El Castillo Ret. Residences*, 2017-NMSC-026, ¶ 18 (concluding that the assessor has an interest in the outcome of a taxpayer's claim of entitlement to a tax exemption). We therefore conclude the Assessor is an aggrieved party under both Rule 1-075 and our standing jurisprudence in light of the facts and posture of this case.

## C. The Transactions at Issue Constitute Changes of Ownership Under Section 7-36-21.2(E)

**{17}** Respondents next argue the Assessor failed to make a prima facie showing of entitlement to relief because she did not show the transfers at issue constituted "changes of ownership" for purposes of Section 7-36-21.2(E) such that the Board's decision was not in accordance with the law or was arbitrary, capricious, or fraudulent. To determine whether the Assessor's petition makes a prima facie showing of entitlement to relief, we must first resolve the legal questions raised in the Assessor's petitions.

**{18}** Section 7-36-21.2(A) sets forth limitations on the percentage by which the value of residential property may be increased from the prior tax year. The statute exempts from those valuation limitations the "valuation of a residential property in any tax year in which . . . a change of ownership of the property occurred in the year immediately prior to the tax year for which the value of the property for property taxation purposes is being determined[.]" Section 7-36-21.2(A)(3)(a). The statute further defines a "change of ownership":

> As used in this section, "change of ownership" means a transfer to a transferee by a transferor of all or any part of the transferor's legal or equitable ownership interest in residential property except for a transfer:
>
> (1) to a trustee for the beneficial use of the spouse of the transferor or the surviving spouse of a deceased transferor;
> (2) to the spouse of the transferor that takes effect upon the death of the transferor;
> (3) that creates, transfers or terminates, solely between spouses, any co-owner's interest;

(4) to a child of the transferor, who occupies the property as that person's principal residence at the time of transfer; provided that the first subsequent tax year in which that person does not qualify for the head of household exemption on that property, a change of ownership shall be deemed to have occurred;

(5) that confirms or corrects a previous transfer made by a document that was recorded in the real estate records of the county in which the real property is located;

(6) for the purpose of quieting the title to real property or resolving a disputed location of a real property boundary;

(7) to a revocable trust by the transferor with the transferor, the transferor's spouse or a child of the transferor as beneficiary; or

(8) from a revocable trust described in Paragraph (7) of this subsection back to the settlor or trustor or to the beneficiaries of the trust.

Section 7-36-21.2(E).

**{19}**  The question of whether the property transfers at issue constitute "changes of ownership" is one of statutory interpretation. "The meaning of language used in a statute is a question of law that we review de novo." *Baker v. Hedstrom*, 2012-NMCA-073, ¶ 9, 284 P.3d 400 (internal quotation marks and citation omitted); *see Rayellen Res., Inc. v. N.M. Cultural Props. Review Comm.*, 2014-NMSC-006, ¶ 16, 319 P.3d 639 (explaining that although the court generally defers to an agency's interpretation of an ambiguous statute or regulation when the agency is charged with administering it and the statute or regulation implicates the agency's expertise, "we will not defer to the agency's . . . statutory interpretation, as this is a matter of law that we review de novo" (alteration, internal quotation marks, and citation omitted)). "The principal objective in the judicial construction of statutes is to determine and give effect to the intent of the Legislature." *Baker*, 2012-NMCA-073, ¶ 10 (alteration, internal quotation marks, and citation omitted). "We rely on rules of construction as aids in determining legislative intent[.]" *Id.*

**{20}**  "The first guiding principle in statutory construction dictates that we look to the wording of the statute and attempt to apply the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 9, 148 N.M. 426, 237 P.3d 728 (alteration, internal quotation marks, and citations omitted); *see* NMSA 1978, § 12-2A-19 (1997) ("The text of a statute or rule is the primary, essential source of its meaning."). "We will not depart from the plain wording of a statute, unless it is necessary to resolve an ambiguity, correct a mistake or an absurdity that the Legislature could not have intended, or to deal with an irreconcilable conflict among statutory provisions." *Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.2d 1236. Furthermore, "we will not read into a statute or ordinance language which is not there, particularly if it makes sense as written." *Id.* (internal quotation marks and citation omitted).

**{21}** Section 7-36-21.2(E) expressly carves out eight exceptions to the definition of "change of ownership," none of which include transfers between individuals or their trusts and LLCs formed to hold title to their properties. Further, contrary to Respondents' position at oral argument, nothing in Section 7-36-21.2(E) indicates that the Legislature intended to provide a non-exhaustive list of definitional exceptions that included other unenumerated types of transfers. *Compare* NMSA 1978, § 14-2-1(A) (2011) (providing that "[e]very person has a right to inspect public records of this state *except* [eight specifically enumerated exceptions]" (emphasis added)), *with* NMSA 1978, § 30-31-6(C)(19) (2018) (designating as Schedule I controlled substances "synthetic cannabinoids, *including*" eleven specifically enumerated synthetic cannabinoids (emphasis added)), *and* Rule 11-404(B)(2) NMRA (providing that evidence of a crime, wrong, or other act "may be admissible for another purpose, *such as* proving" nine permitted uses (emphasis added)). Had the Legislature intended the list of exceptions provided in Section 7-36-21.2(A) to be non-exclusive, it presumably would have included appropriate language to that effect, as is found in the examples cited above. Given the plain language of the statute, and the conspicuous absence of any limiting language, we are not persuaded that the Legislature intended to include exceptions to its definition of "change of ownership" beyond those exceptions expressly delineated. *See Baker*, 2012-NMCA-073, ¶ 30 (explaining that "the canon of statutory construction known as *expressio unius est exclusio alterius* [means] the inclusion of one thing implies the exclusion of another"). Accordingly, we conclude that a transfer of residential property between an LLC's members and the LLC itself constitutes a "a change of ownership" within the meaning of Section 7-36-21.2(A)(3)(a), subjecting the property to a valuation based upon its "current and correct value[,]" regardless of whether the proportional beneficial interests remain intact. This conclusion is consistent with both the distinct legal status afforded to an LLC, *see* NMSA 1978, § 53-19-10(A) (1993) ("A limited liability company formed pursuant to the Limited Liability Company Act is a separate legal entity."), and the Legislature's broad definition of "change of ownership" as a transfer "of all or any part of the transferor's *legal or equitable* ownership interest[.]" Section 7-36-21.2(E) (emphasis added).

**{22}** Respondents, however, argue that applying the plain language of Section 7-36-21.2(E) would result in an absurdity not intended by the Legislature. In particular, Respondents argue that a literal application of the statute would remove the statutory limitation on valuation increases whenever a homeowner refinances, grants an easement over, incurs a lien on, or in any way conveys a legal or equitable ownership interest in his or her property. Respondents Robert and Linda Fox urge us to follow the lead of California and Oklahoma, which have exempted similar transfers from their equivalent definitions of "change of ownership" for purposes of their respective counterpart limitations on property valuation increases. *See* Cal. Code Regs. tit. 18, § 462.180(b)(2) (West 2018); *In re Assessments for the Year 2005 of Certain Real Prop. Owned by Askins Props., L.L.C.*, 2007 OK 25, ¶ 16, 161 P.3d 303. However, the California exemption of such transfers from its definition of "change of ownership" is founded upon an express statutory provision to that effect, a delineated exemption not present in Section 7-36-21.2(E). *See* Cal. Rev. & Tax. Code § 62(a)(2) (West 2018) (exempting from "change of ownership" "[a]ny transfer between an individual or

individuals and a legal entity or between legal entities . . . that results solely in a change in the method of holding title to the real property and in which proportional ownership interests of the transferors and transferees, whether represented by stock, partnership interest, or otherwise, in each and every piece of real property transferred, remain the same after the transfer"). With respect to the Oklahoma exemption, that state's Supreme Court has held that such transfers are exempt based on constitutional and statutory provisions textually distinct from Section 7-36-21.2(E). *Askins Props., L.L.C.*, 2007 OK 25, ¶ 9. While Article 10, Section 8(B) of the Oklahoma Constitution excludes property that is "transferred, changed or conveyed to another person" from limitations on value increases, there is an implementing statutory provision, Okla. Stat. tit. 68, § 2802.1(A)(1), (4)(g) (2002, amended 2014), found constitutional in *Askins*, which specifically exempts property that "is transferred from a person to a . . . limited liability company . . . of which the transferor . . . [is] the only owner[.]" Thus, little guidance is provided by those states' jurisprudence and statutes. *See generally State v. Office of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 28, 285 P.3d 622 ("[W]hen relying on [out-of-state] authority we must ensure that another court is not relying on language that is absent from our statute or that the language of the statute differs so greatly from ours that it serves a different purpose.").

**{23}** To the extent that Respondents argue that a strict application of the plain language of Section 7-36-21.2(E) leads to an absurd result here in the form of a tax increase even though only the method of holding title to property changed, not the identity of the individual owners, that is a matter to be addressed by the Legislature, not the courts.[1] We therefore conclude the transfers at issue constitute "changes of ownership" as contemplated by the Legislature.

**D.    The Assessor Made a Prima Facie Showing of Entitlement to Relief**

**{24}** Having resolved in favor of the Assessor the questions of law upon which her petitions are based, we turn now to the sufficiency of her showing of entitlement to relief under Rule 1-075(G)(2) (requiring the district court to issue a writ of certiorari if, among other things, the petition "makes a prima facie showing that . . . the petitioner is entitled to relief"). We observe initially that "review by certiorari will lie when it is shown that the inferior court or tribunal has exceeded its jurisdiction or has proceeded illegally," *Regents of University of New Mexico v. Hughes*, 1992-NMSC-049, ¶ 19, 114 N.M. 304, 838 P.2d 458, with the term "illegally" properly interpreted to be synonymous with

1 We note the Legislature considered, but did not pass, a bill in 2015 that would have included the transfers at issue in Section 7-36-21.2(E)'s list of exceptions. *See* H.B. 247, 52nd Leg., 1st Sess. (N.M. 2015) (adding as an exception to "changes of ownership" a transfer "that only changes the manner of holding title and does not change the proportional beneficial interests in the residential property held before the transfer"); *cf. State ex rel. King v. Lyons*, 2011-NMSC-004, ¶¶ 9, 47-50, 149 N.M. 330, 248 P.3d 878 (noting that "the Legislature . . . is well informed about the law and that its legislation is usually intended to change the law as it previously existed[,]" and explaining that the voters' rejection of a constitutional amendment authorizing the Land Commissioner to exchange public lands reflects "the lack of legal authority to conduct unrestricted land exchanges" (internal quotation marks and citation omitted)). *But cf. State ex rel. Udall v. Pub. Emps. Ret. Bd.*, 1994-NMCA-094, ¶ 20, 118 N.M. 507, 882 P.2d 548 ("Under our system of government, law is not made by defeating bills or proposed constitutional amendments."), *rev'd on other grounds*, 1995-NMSC-078, 120 N.M. 786, 907 P.2d 190.

"arbitrary, unlawful, unreasonable, capricious, or not based on substantial evidence." *Id.*; *see* Rule 1-075(R) (explaining that the district court shall determine whether the agency's action was (1) fraudulent, arbitrary, or capricious; (2) not supported by substantial evidence in the record; (3) outside the scope of the agency's authority; or (4) otherwise not in accordance with the law); *Zamora*, 1995-NMSC-072, ¶ 17 (explaining that "[j]udicial review of administrative action requires a determination whether the administrative decision is arbitrary, unlawful, unreasonable, capricious, or not based on substantial evidence" (omission, internal quotation marks, and citation omitted)); *N.M. Regulation & Licensing Dep't v. Lujan*, 1999-NMCA-059, ¶ 8, 127 N.M. 233, 979 P.2d 744 ("[A]n agency's decision is not in accordance with the law if the decision or action taken by the agency was based on an error of law."); *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1994-NMCA-139, ¶ 31, 119 N.M. 29, 888 P.2d 475 ("The district court should have granted the writ [of certiorari] if the [c]ity [c]ouncil had acted illegally, as would be the case if the [c]ouncil's interpretation of the zoning code was incorrect.) (citation omitted).

**{25}** The Board determined that the real property transfers at issue were not "changes of ownership" for purposes of Section 7-36-21.2(E) because the properties had the same "ultimate" owners. However, as we have stated above, the Board's conclusion was clearly erroneous since the underlying transfers constituted "changes of ownership" as that term is defined by the plain language of the statute. Accordingly, the Board's decisions in both cases were not in accordance with the law, and the Assessor has satisfied the requirement of Rule 1-075(G)(2) that she make a prima facie showing of entitlement to relief. We therefore need not address whether the Board's decision was arbitrary and capricious.

## III.    CONCLUSION

**{26}** Having concluded the district court has jurisdiction, the Assessor may seek review of the Board's decision under Rule 1-075, and the transfers at issue constitute "changes of ownership" for purposes of Section 7-36-21.2(E), we remand to the district court with instructions to vacate the Board's decisions and remand the matters to the Board for further proceedings consistent with this opinion.

**{27}   IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**J. MILES HANISEE, Judge**